# Warren District Development Company, Ltd., Appellee, v. Miners & Merchants Bank, Appellant.

## Gen. No. 15,945.

BANKS AND BANKING—*when deposit cannot be recovered.* Held, under the evidence that the deposit sued for in this case could not be recovered by the depositor, first, because it did not appear that the bank had received the plaintiff's money which in justice and fair dealing it could be compelled to return to the plaintiff; second, because the bank had not improperly disbursed the money received by it, and third, because a delay of ten months in repudiating the action of the bank in paying out the money, amounted to a ratification of what the bank had done.

Assumpsit. Appeal from the Circuit Court of Cook county; the HON. JOHN GIBBONS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed with finding of facts and judgment. Opinion filed December 22, 1911.

PECKHAM, BROWN, PACKARD & WELSH, for appellant.

JUDAH, WILLARD, WOLF & REICHMANN, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

This action was brought in the Circuit Court by appellee, the Warren District Development Co. Ltd., a limited partnership under the laws of Michigan, against the Miners and Merchants Bank of Bisbee, Arizona, appellant, to recover the sum of $7,500 with interest, alleged to have been deposited by the appellee with the appellant Bank, and which money, it was alleged, was paid out by the Bank contrary to instructions accompanying the deposit.

The defenses of the Bank are: first, that such departure from the instructions as were made, were authorized and directed by one Fred A. Sutter, an attorney-at-law in Bisbee, who, while nominally standing as one of the parties to the transaction, in reality acted as the agent and attorney for the party that issued the original instructions, and was also equally interested with the depositing party in the fruits of the enterprise, being a member of a partnership of four persons who conceived the scheme in which the creation of the Warren District Development Co. Ltd., was an intermediate step, for a profit-seeking plan in which the four persons in question were to reap large rewards; that Sutter had just as much right to dictate or vary instructions to the Bank as Hanchette, whose unsigned letter constituted the instructions from which Sutter authorized the deviations complained of.

Secondly, the Bank contends that the delay of ten months on the part of the plaintiff before repudiat-

542 APPELLATE COURTS OF ILLINOIS.

Warren Dist. Dev. Co. v. M. & M. B'k, 166 Ill. App. 540.

ing the acts of the agent and making demand on the defendant for the return of the money, after it had been fully informed of the action of the Bank, during which period it sought by divers pretexts to retain the fruits of the transaction, that is, certain mining properties, constituted in law a ratification of the action of the Bank; that the principal with full knowledge of what the Bank had done sanctioned a suit brought to settle the claims of certain jumpers and did not wait for the favorable outcome of the action; that it refused an offer for the vendor of the properties to return the money, thereby prejudicing the chances of the Bank to reimburse itself; that it authorized assessment work to be performed in its behalf on the properties, expecting from the favorable development work done on adjacent properties that this particular property would greatly enhance in value; that it issued stock to Sutter pursuant to the original partnership agreement; that it invited and accepted subscriptions to stock, and manifested in other ways as plainly as it could be done an unmistakable desire to hang on to the mining claims until after ten months' delay, waiting for better conditions and stock subscriptions in the Development Company which failed to materialize; and it seeks in this action to hold the Bank for its already ratified action in regard to the payment of the money.

The case was tried by the court without a jury, and judgment was rendered for the plaintiff in the sum of $9,297.51.

The declaration filed in the case consisted of the common counts. Later three additional counts were filed. These additional counts are framed upon the theory that because of the violation of instructions by the defendant, the plaintiff was entitled to a repayment of the money with interest, and not upon the theory that the plaintiff, because of the violation of its instructions by the Bank, was entitled to damages occasioned thereby.

No proof was made of actual damages suffered by the plaintiff. The plaintiff rested its case on the trial entirely upon the proof of the alleged violation of instructions, without any proof that the plaintiff returned or authorized the return by the Bank of the papers and property received by it for the money of the plaintiff paid out by the defendant. No question, therefore, as to the measure of damages is presented. The sole question is as to the right of the plaintiff, upon the facts shown in evidence, to have the money deposited in appellant Bank paid over to the plaintiff and, on refusal, to have a judgment therefor.

The action is necessarily based on the theory that the money when advanced belonged to the plaintiff, and was placed in defendant's hands and possession by the plaintiff under specific directions as to when it was to be paid over, and that the defendant Bank, without authority, violated the instructions given it, and therefore it is legally obliged to repay the money to appellee.

In order to determine the main question of the right of plaintiff to recover back the money deposited by it in appellant Bank, we must first determine who advanced the $7,500 sued for to the appellant; and secondly, who did Sutter represent, and in what capacity, and what was his authority?

The evidence shows that on May 5, 1903, Fred Hedburg was the owner of a group of twelve mining claims located in the Warren district, Cochise county, Arizona, and gave an option to purchase the same to one George C. Clark, agreeing to convey to Clark, the mining claim described therein on the payment of the sum of $75,000, ten per cent. of which sum was to be paid on July 4, 1903, twenty per cent. on or before one year from that date, and the balance on or before two years from that date, the payments to be made at the Miners and Merchants Bank of Bisbee, Arizona, to the credit of Hedburg. On the same date, namely, May

5, 1903, George C. Clark assigned and transferred the option, in consideration of one dollar, to Fred A. Sutter.

A contract was made dated at Hancock, Michigan, June 27, 1903, between C. D. Hanchette, Louis Grabower, John Funkey and F. A. Sutter, which recited the option to Clark, and the assignment of the same by Clark to Sutter, and that Sutter had given an option to Funkey for Funkey and Hanchette, and that a new contract was made between Funkey, Grabower and Sutter by which Funkey and Grabower agreed to find a purchaser for the group of mines, and in consideration thereof were to share all profits with Sutter on all moneys that could be obtained above the $75,000; and that the agreement was made with the understanding that it was done with the consent of C. D. Hanchette, and that if he desired to enter into the arrangement he would participate in the profits, which would be equally divided among the four. The agreement further recites that the Warren District Development Co. Ltd. was formed for the purpose of taking the option for the sum of $150,000, ten per cent., or $15,000 of which was to be paid in cash and twenty per cent. in one year and the balance in two years from July 4, 1903. It is further recited in the agreement that it was proposed to sell 2,000 shares of stock of the Warren District Development Co. Ltd. for $10 per share, making $20,-000, $15,000 of which was to make the first payment on the property in question and a bond was to be issued to the company. The agreement further states that the development company was to turn in to Grabower $6,000 and he was to forward the same with $1,500 more to the bank of Bisbee, which amount would be the first payment from Sutter to Hedburg, and the Development Company would issue $9,000 of the stock to Grabower, which should be in full for the first payment of $15,000 on the bond; that the $9,000 in stock should be sold and out of the proceeds of the sale

one J. A. Fuller should receive $500, Grabower $500, and then the next money received was to be divided equally among Funkey, Hanchette and Grabower until they should each have received $1,000; and the balance of the stock that was sold and cash turned over should be divided among Grabower, Funkey, Sutter and Hanchette.

On June 26, 1903, Hanchette prepared and sent a letter unsigned to the Bank of Bisbee, Arizona, as follows:

''Gentlemen:

Enclosed herewith we hand you a draft for $7,500, a part of the first payment to be made upon the Hedburg group of claims described as follows: (giving a description of the claims.)   Mr. Sutter will have executed in favor of the Warren District Development Co. Ltd., a bond direct to the company from himself for the sum of $150,000.00, of which 10 per cent. is to be paid in cash on July 3, 1903, 20 per cent. or $30,000, July 3, 1904, and the balance July 3, 1905; a deed of said claims from Fred Hedburg to Fred A. Sutter, and from Sutter to the Warren District Development Company, Ltd., which deed shall be left in escrow in your hands in accordance with escrow instructions to turn the same over to the Warren District Development Co. Ltd., when the full amount of the purchase price is paid, as per the bond.

We shall want Mr. Sutter's written certificate accompanying the abstract of title that the title is perfect and we shall want also a certificate from the surveyor who has examined the ground that there are no adverse claims located thereon.   When you have received the above mentioned documents, you will please pay the enclosed $7,500 to Messrs. Fred Sutter, Fred Hedburg and F. A. Clark and take a receipt from Hedburg and Clark for $7,500 and from Mr. Sutter for $15,000.   We do not wish to pay this money over unless the deeds are deposited and contract is signed and

546     APPELLATE COURTS OF ILLINOIS.

Warren Dist. Dev. Co. v. M. & M. B'k, 166 Ill. App. 540.

certificates of Sutter and the surveyor are filed with you."

Three days after the dispatch of the above letter to the Bank at Bisbee, articles of association of the Warren District Development Co., Ltd., were prepared and signed by Louis Grabower, John Funkey, Charles D. Hanchette, Joseph Croze, William Condon, J. A. Fuller and N. A. Metz, in which they agreed to associate themselves together in a limited partnership, each of the persons subscribing one thousand dollars to the total amount of the capital stock, and specifying the managers for the first year. These Articles were received and filed by the registrar on June 29, 1903.

As affording light upon the plans and purposes of Hanchette, Grabower, Funkey and Sutter, the letter of June 8, 1903, from Hanchette to Sutter should be referred to. In the letter Hanchette states in substance that Grabower has showed him a contract by which "three of you" were to divide the profits over and above the option price. He said, however, that he, Hanchette, was included in the deal, and that it was understood that each one of the four would have a quarter-interest. Grabower mentioned one or two parties that he had opened negotiations with but it seemed almost impossible just at the present time to do anything with any Bisbee properties or any other properties because of the very bad condition of the money market. However, Grabower thought best for "us" to make the first payment and hold it for a year and then in case the Higgins people got ore within that time it would have some value. So that "we" would practically have a sure thing.

Hanchette again writes Sutter as appears from the record, under date of June 19, 1903, to the effect that Grabower, Funkey and himself, had made the following arrangements with reference to the Hedburg group of claims upon which Clark had an option for sale, and speaks of Sutter having received an option from Clark

which requires the payment of $75,000 before July 4, 1903, 20 per cent. on July 4, 1904, and the balance July 4, 1905, and that it had been agreed between Grabower and Funkey that if they could find a purchaser the profits were to be divided among the three equally, but that if he, Hanchette, would consent to the agreement, he would be entitled to a quarter-interest with each of the others in the enterprise, and that acting upon that arrangement they had started to get together twenty persons to put in $1,000 each and to organize a limited partnership association under the name of the Warren District Development Co.   The letter states that they haven't all the twenty interests taken as yet, and speaks of an understanding that each one of the four should take a twentieth interest, and that if all of the twenty interests are subscribed for, they would have $20,000, $15,000 with which to make the first payment upon the bond and $5,000 for working capital, and that out of the $15,000 the four would pay the $7,500 to Hedburg and that the other $7,500 would be profit to the four and out of the $7,500 profit they would pay for their twentieth interests and the balance in cash was to be divided between them.   In the letter he directs Sutter to get all the papers drafted and signed necessary to make the transaction complete, and suggests that they would have to have abstracts of title of all the claims certified to by the Registrar at Tombstone, which would include copies of papers filed, a certificate from the surveyor that he has made an examination of all the ground covered by the claims, and that there were no adverse claims, and that a bond should be made direct to the Warren District Development Company, Ltd., by Sutter just the same as the one that he received from Hedburg, with the difference of the amounts of the payments; then a deed accompanying these claims should be made by Hedburg to Sutter, and a similar deed by Sutter to the Warren District Development Co., Ltd.; and that the deeds

were to be placed in escrow in the Bank at Bisbee, with the escrow papers signed by Hedburg for his deed, and a similar paper signed by Sutter for his deed.

On June 26, 1903, Hanchette again writes to Sutter stating that it will not be necessary for him to go to Arizona to fix up the details of the deal, because Sutter could arrange it in good shape; and stating that while the money for the subscription of the company has not come in, when sufficient money does come to make the payment he would forward it to Sutter, so that he could take up the option. The letter makes some further suggestions as to looking up the titles in respect to relocation of claims.

On the same day Hanchette again writes to Sutter in regard to sending the $7,500 to the Bank of Bisbee, accompanied by a letter, a copy of which he encloses to Sutter. He states in the letter that they have not yet collected the money, $7,500, to send him, but expect to do so in the course of the day, and in the course of a few days the money is to be paid and the option be actually secured; and expressed the belief that they would be able to sell the rest of the 20,000 shares of stock at $10 per share so that they will have some profits to divide among Funkey, Grabower, Sutter and himself.

Then he says: "To keep the matter straight there being only $6,500 actually subscribed thus far, we have to put up the $1,000 ourselves until we can sell enough of the stock to pay the balance. You will issue a receipt for the $15,000 and take a receipt from Clark and Hedburg for $7,500. The stock paid for by this $15,000 will be carried by ourselves temporarily as profits until it can be disposed of. When it is disposed of, it will be divided."

On June 29, Grabrower writes to Sutter with reference to the deal as follows:

"I think the four of us will clean up a nice sum when we re-sell the property or else float it ourselves. I

expect we will put this property into a company for no less than $300,000. This will give the Warren Development Company $150,000 of which we share profits aside of us four turning this over for $150,000 to Warren Development Company. This is entirely between us four, and outsiders must not know what the original cost is. Perhaps you can sell some shares at Bisbee in the Warren District Development Company. * * * I think we better lay quiet for about three months and let Higgins develop for us, and should they find any ore, we can get double for the property. So kindly watch everything and report and also let me know where the assessment work will have to be done.''

On the same day Hanchette writes to Sutter,

''I hope there will be no difficulty, and that you will arrange everything satisfactorily, and send copies of all the papers that are left in escrow to us together with a copy of the bond from Hedburg to Clark and you and the bond from you to the Warren District Development Company, Ltd.''

Mr. C. A. Bennett, teller of appellant, testified that Sutter informed him at the time of the transaction that he was the attorney for and partner of C. D. Hanchette and Louis Grabower, and as such attorney and partner Sutter instructed him to pay the money over to Hedburg and Sutter on the contracts and deeds deposited and the abstract from the County Recorder and the certificate from Mr. Clark, which were all forwarded to Hanchette; and that there was no demand upon appellant for the money prior to May 14, 1904.

We think that we have quoted from the correspondence of the four people immediately interested in securing the contract for the conveyance of the moneys in question, and referred to the evidence sufficiently to show that the whole matter of preparing the papers and securing a good title, and the evidence of such title to the mining claims in question, as well as the expenses connected therewith, and the making of the

550 APPELLATE COURTS OF ILLINOIS.

Warren Dist. Dev. Co. v. M. & M. B'k, 166 Ill. App. 540.

first or cash payment on the property, was a matter for the four persons, namely, Hanchette, Grabower, Sutter and Funkey, who were to turn over the contract of purchase with proper deeds of conveyances to the plaintiff, at a profit of $75,000; in other words, they were to get the property at $75,000 and turn it over to the plaintiff at $150,000. Until this was done and everything necessary to effect it, the plaintiff did not advance or deposit any money or become interested in the deal. It is true that in order to raise the $7,500 Hanchette and Grabower used a portion of the money which was paid in for capital stock of the plaintiff, yet, when the money was so used the plaintiff had not been organized and was not in legal existence; and that Hanchette and others simply assumed the responsibility of using the money without plaintiff's authority, for their own purposes, using with it some of their own money, in order to raise the $7,500 necessary for them to make the deposit in appellant Bank to secure the option contract from Hedburg.

The next question is, who did Sutter represent, and in what capacity, and what was his authority?

The inference from the evidence on this question already adverted to seems irresistible. Specifically the written agreement of June 27, 1903, may be again adverted to, not only for the purpose of showing a partnership agreement whereby Hanchette, Grabower, Funkey and Sutter in the matter of securing the option contract for the purchase of the mining claims for $75,000 and reselling the claims to appellee at $150,000 and the division of the profits equally among them, but also for the purpose of showing Sutter's authority as a trusted member of the firm, residing at the place where the business was to be transacted. He was a lawyer well versed in the law of titles to mines in Arizona as appears from his correspondence in the record. He took and held an assignment of the option contract given by Hedburg in his own name for the

CHICAGO—FIRST DISTRICT—DECEMBER, 1911.   551

Warren Dist. Dev. Co. v. M. & M. B'k, 166 Ill. App. 540.

benefit of himself and his then associates or partners. He was designated by Hanchette and Grabrower for obvious reasons to attend to the preparation of the necessary papers for transferring the title of the mines to appellee, and the deposit of the papers in escrow with the appellant Bank. All the evidence relating to his authority considered in connection with his established relation as partner in the enterprise justifies the inference that he had as much authority to give directions to appellant Bank as Hanchette or any other member of the co-partnership. We find in the record no specific authority given to Hanchette by the partners or either of them to prescribe the exact conditions of the payment of the money in appellant's hands. Mr. Sutter was on the ground. In addition to his relation to the business as a partner, he was the legal adviser who was to pass upon the title to the mines and give a certificate or opinion as to the title. Hanchette writes under date of August 31, 1903, "Mr. Funkey said that you agreed to take care of the work there and we were expected to do the work here." The evidence shows that Sutter carefully protected the interests of his associates and his own interests as well, for they were identical. In view of unforeseen exigencies which arose, he gave directions to the bank which were dictated by reason and good sense. His letter to Hanchette of July 7, 1903, explains fully the whole transaction and gives his reasons for what he did. Hanchette's reply to this letter, dated July 13, 1903, after he had been fully informed as to what had been done by Sutter and appellant, not only by Sutter's letter, but by the Bank's letter of July 3, 1903, does not hint at a repudiation of what had been done. He does not even find fault with what Sutter or the Bank had done. He notices that there are no affidavits as to location or assessment work, or a mention of what claims are in dispute, and speaks of the omission of the "Kite" claim from the option to the Development Company,

552 APPELLATE COURTS OF ILLINOIS.

Warren Dist. Dev. Co. v. M. & M. B'k, 166 Ill. App. 540.

and asks him to "correct this on the bond from you to the company which is in the hands of the Bank." He says, "I hope that these conflicts will not amount to anything, and I am sorry that you did not have your certificate as to the title." He then states what in his opinion they should have "in order to be perfectly sure in all these matters." Hanchette then mentions the advances which Funkey, Grabower and himself had been obliged to make in order to provide for the first payment, and how with Mark's check they had been able to pay themselves back all but $333 apiece. He urges Sutter to sell some stock in the company in Bisbee, and if Sutter could sell three or four hundred shares "we would have a profit to divide up." The whole trend of the letter is in the direction of carrying out and closing up what had been done, and in confirmation thereof.

Grabower, another active member of the firm of four, writes from Detroit, Michigan, under date of July 15, 1903, in reply to a letter from Sutter of July 8th, being evidently in possession of the facts as to what had been done, as follows: "Hanchette and myself are of the opinion that we better lay quiet until about September 1st, and then the Warren Development Co. can turn over the property to some company which we ourselves can start at whatever price we think best." After cautioning Sutter that he must say, "the land cost us as sold to the Warren Development Company," he closes by saying, "As soon as I get home, will dispose of a few shares so that we can get enough to divide the $7,500 among us four." There is no word of repudiation of what Sutter had done, or even of criticism in the letter of Grabower.

Without quoting further from the correspondence, the idea and purpose manifested in it is to straighten out the matters connected with the title of the mining claims while they were endeavoring to sell the stock in the plaintiff association which they were organizing,

and waiting for the results of the development of the Higgins group of claims which adjoined the Hedburg claims. Hanchette becomes impatient in some of his letters because Sutter did not progress as rapidly with the matters he had in hand as Hanchette thought he might, and because he did not make a trip to Tombstone to secure certain papers and records. In this connection Hanchette occasionally suggests in his letters to Sutter that unless the title matters were straightened out satisfactorily they would have to hold the Bank and Hedburg liable. Sutter in reply to a letter from Hanchette dated August 31, 1903, writes that the abstract of title which he had sent to Hanchette contained everything on record, and explains why he could not certify to the title as perfect, and further that surveyor Clark's certificate ''did not mention certain conflicts, because they had not at that time been surveyed.'' He states that he has filed suit against the jumpers and that the $1,875 reserved will be more than sufficient to bring about a settlement, and adds: ''When the matter is cleared up, you will, I am sure, think I have acted wisely by doing as I have.''

Hanchette in his reply to the above letter under date of September 16, is apparently satisfied with Sutter's explanation, and encloses a form of certificate such as he desires. He indicates the impossibility of selling any stock, and that they have not sold enough even to pay back the advances of himself, Grabower and Funkey.

We cannot take the time to state further the substance of what appears in the correspondence bearing upon the question now under consideration, for it would extend this opinion beyond reasonable limits. We cannot doubt, upon a full consideration of all the evidence, that Sutter had ample authority to give the Bank the directions under which it paid the money sued for in this case.

554    Appellate Courts of Illinois.

Warren Dist. Dev. Co. v. M. & M. B'k, 166 Ill. App. 540.

Either of the conclusions of fact above stated makes it legally impossible for appellee to recover the money sued for in this case. To allow a recovery would be inequitable and unjust. The special counts of the declaration aver certain facts which it would be necessary to prove in order to sustain an action for money had and received.

"To sustain the count for money received by the defendant for the use of the plaintiff, it is only necessary to show that the defendant has obtained possession of money or something as money which *ex aequo et bono,* he ought to refund." (Ency. of P. & P. Vol. 2, 1016.)

If appellant Bank did not receive appellee's money in justice and fair dealing it ought not to be compelled to pay the money to appellee. If appellant paid out the money under the direction of appellee or its authorized agent, it is not liable to appellee for the money.

The delay of ten months during which appellee, on the assumption that the money belonged to it, retained the rights secured by the payment of the money by appellant, and the benefits of the transaction before the payment was repudiated and demand made on appellant for a return of the money, constituted in our opinion a ratification of the action of appellant Bank. Indianapolis R. M. Co. v. St. L. R. R. Co., 120 U. S. 256; Law v. Cross, 66 U. S. 533; McGeoch v. Hooker, 11 Ill. App. 655; Searring v. Butler, 69 Ill. 575; Ernst v. McChesney 186 Ill. 617; Williams v. Merritt, 23 Ill. 573; Harrod v. McDaniels, 126 Mass. 415.

Aside from the delay there is much evidence in the record, some of which has been referred to, showing that the act of the Bank in paying out the money under the directions of Sutter was ratified and confirmed by Hanchette and his associates. Our conclusion from the evidence is that the payment of the money by the Bank was ratified and approved by Hanchette and his associates in their efforts to carry out and complete the

transaction at the Bank and in the retention by them of the fruits and benefits of the payment of the money. In line with this attitude and conduct was the refusal to accept a return of the money paid by the Bank from Hedburg in January, 1904. A further act of ratification was the authorization of Hedburg in November, 1903, by Hanchette and others to do the necessary assessment work which was to be paid for by the Hanchette people when a settlement was made with the jumper claimants. Hatch v. Taylor, 10 N. H. 538; Valley Bank v. Brown, 9 Arizona, 311.

The judgment of the Circuit Court is erroneous and is reversed with a finding of fact, and judgment is entered in this court on the finding in favor of appellant, Miners & Merchants Bank, and against appellee, Warren District Development Company, Ltd.

*Reversed with finding of facts and judgment.*